HARPER ET AL. V. DOTSON ET AL.

1. **Damages:** PROXIMATE CAUSE. If property is wrongfully taken from the owner and destroyed by fire, the wrong-doer is liable therefor; his liability, however, arises not from the fact of loss by fire, but from the tort which preceded the loss.

2. ———: ———: ———. H sold a steamboat to D with a covenant of warranty that it was free from all liens; the boat was afterwards seized under a lien of W, and while in the possession of the marshal it was

destroyed by fire: *Held*, that while the destruction of the boat may have been the result of the negligence of H in failing to discharge the lien, yet that such negligence was not the proximate cause, rendering H liable in damages to D.

3. **Vendor and Vendee:** WARRANTY: EXISTING LIEN. A vendee of personal property, with covenants of warranty, may discharge an existing lien upon the property purchased, and deduct the amount from the unpaid balance of the purchase price.

*Appeal from Pottawattamie District Court.*

TUESDAY, JUNE 6.

ACTION to recover on two promissory notes, made for $1,500 each, by defendants to plaintiffs. The defendants set up a failure of consideration, and also a counter-claim of $7,000. The plaintiffs sold to defendants a steamboat for $10,000, of which $7,000 was paid in cash, and the notes in suit were given for the balance. The plaintiffs covenanted that the boat was free from liens. Afterwards it appeared that it was not free from liens at the time of said sale, but one Geo. D. Winchell, Upson & Co. held a lien for $251.50, who filed their libel in the office of the Clerk of the District Court of the United States for the District of Nebraska, libeling said steamboat for and upon said lien.

After the seizure of said steamboat, under said libel, and while the same was in the custody of the U. S. Marshal, other lien-holders, to-wit: seamen, who became lien-holders after the sale to the defendants, filed their libels against said boat respectively, and all said lien-holders obtained decrees respectively against said steamboat. Previous to the rendition of said decrees, said steamboat, with the exception of the hull, machinery and fixtures, was destroyed by fire. Afterwards the hull, machinery and fixtures were sold upon the executions upon said decrees, and the proceeds, being insufficient to pay all the said decrees, were applied under the order of the court in payment of those held by the seamen, whose liens were held paramount to the lien of Winchell, Upson & Co., the latter being for the non-delivery of freight.

The notes in suit matured before the execution sale. The

plaintiffs, before the sale, admitted the validity of the Winchell, Upson & Co. claim, and offered to deduct the amount from the notes. The jury found a verdict for the defendants in the sum of $8,335.13. They also found a special verdict, which is in these words: "1st. Did a lien exist upon the steamboat Lady Grace in favor of Geo. D. Winchell, Upson & Co., at the date of the purchase of said boat by defendant Dotson, and if so, in what amount?

Yes. Amount, $251.50.

2d. Did a lien exist upon the steamboat Lady Grace, in favor of Wm. Coleman, at the date of the purchase of said boat by the defendant Dotson, and if so, in what amount?

Do not know.

3d. Was the steamboat Lady Grace seized by the U. S. Marshal under process issued from the District Court of the United States for the District of Nebraska, at the suit of Geo. D. Winchell, Upson & Co., Kooken & Weeks, Reuben Shade, Leman Dotson, Clinton Dotson and Wm. Steinspring, and Wm. Coleman, and were judgments obtained against said boat in all of said suits except that of Coleman?

Yes.

4th. While held under the process issued in said several suits referred to in the last question, was said boat, with the exception of her hull and some of her machinery and fixtures, destroyed by fire?

Yes.

5th. Were the machinery and fixtures remaining after said fire (if such fire occurred), sold by virtue of executions issued upon judgments obtained in the suits of Geo. D. Winchell, Upson & Co., Kooken & Weeks, Reuben Shade, and Leman Dotson, Clinton Dotson and Wm. Steinspring, and what amount was realized from said sale?

Yes. Amount of sale of steamboat, $916.

6th. Was any portion of the proceeds of said sale devoted to the payment of the claims of Geo. D. Winchell, Upson & Co., or Wm. Coleman, against the steamboat Lady Grace, or have said claims ever been paid, in whole or in part, by the defendants?

We do not know.

7th.　Were the entire proceeds of the sale of the machinery and fixtures of the steamboat Lady Grace applied under the order of the United States District Court for the District of Nebraska, to the payment of the costs and judgments in the cases of Reuben Shade and Leman Dotson, Clinton Dotson and Wm. Steinspring, against the steamboat Lady Grace?

Yes.

8th.　Were the judgments of Kooken & Weeks, Reuben Shade and Leman Dotson, Clinton Dotson and Wm. Steinspring, for indebtedness contracted by the Lady Grace after her purchase by the defendant, Dotson?

Yes."

The plaintiffs moved for a judgment in their favor for the amount claimed in the petition, on the special verdict, and to set aside the general verdict. The court sustained the motion so far as to set aside the verdict for damages for defendants. Both parties appeal, the plaintiffs perfecting their appeal first.

*Clinton, Hart & Brewer*, for appellants.

It is the duty of a party to protect himself from threatened injury or damage, when he can do so at moderate expense or by ordinary efforts. (*Davis v. Fish*, 1 G. Greene, 409; *Sherrod v. Langdon*, 21 Iowa, 521; *Mather v. Butler Co.*, 28 Id., 259.) Before secondary evidence is admissible, foundation for it must be laid by showing the loss of the primary, or, in its absence, of notice to produce it. (*Greenough v. Sheldon*, 9 Iowa, 506; *Patterson v. Linder*, 14 Id., 417.) Parties are not estopped by an adjudication unless the exact point in issue has been adjudicated. (*Griffin v. Seymour*, 15 Iowa, 32.) When the special findings and general verdict are inconsistent, the former controls the latter, and judgment should be entered upon them when, with the facts admitted by the pleadings, they are decisive of the case. (*Lamb v. First Pres. Soc.*, 20 Iowa, 129.) The covenant against incumbrances did not constitute plaintiffs insurers. Under the covenant they are liable only for the natural, direct and proximate con-

sequences of its breach. (*Thomas v. Isett*, 1 G. Greene, 474; *Davis v. Fish*, 1 Id., 408; *Plumb v. Woodmansee*, 34 Iowa, 119.)

*Montgomery & Scott*, for defendants.

To render a parol waiver of performance of covenant valid, it must have occurred before breach; as, after the covenant is broken, nothing short of an accord and satisfaction will be a bar to an action. (*United States v. Howell*, 3 Wash. C. C., 620; *Cumber v. Wayne*, 1 Smith's L. C., note; *Shaw v. Hurd*, 3 Bibb, 371; Rawle on Cov., 2 ed., 375–6, note 3.) It is not necessary, in order that defendants may maintain their defense or cross-claim, that they should have given plaintiffs any notice at all of the pendency of the suits against the boat or the seizure thereof. (*King v. Kerr's Adm'rs*, 2 Hill, 105.) For a special verdict to defeat a general one, it must be inconsistent with it, and the inconsistency must be affirmatively shown. (*Bonham v. The I. C. Ins. Co.*, 25 Iowa, 328.) It is sufficient to constitute a breach of covenant against incumbrances, that the incumbrance exists, whether asserted or not. (*Funk v. Cresswell*, 5 Iowa, 62.) The covenantee, upon breach of covenant, may permit outstanding liens to ripen into an absolute title, and upon eviction recover purchase money with interest. (*Elder v. True*, 32 Me., 104; 3 Washb. on Real Prop., 422; *Chapel v. Bull*, 17 Mass., 323.)

ADAMS, J.—I. It is claimed by the defendants that they were divested of their title by reason of a lien, against which the plaintiffs had covenanted, and that the measure of their damages is the purchase price of the boat.

That a lien, to-wit: the lien in favor of Winchell, Upson & Co., did exist when the plaintiffs sold to the defendants, is not denied. That the boat was libeled by Winchell, Upson & Co., and a decree obtained in their favor against the boat, is also not denied. But the claims under which the boat was really sold were the seamen's claims, because they were paramount (although subsequent in time) to that of Winchell, Upson &

Co., and were sufficient to absorb all the proceeds. It is said, to be sure, that the seamen would not probably have libeled the boat, if it had not been libeled by Winchell, Upson & Co.; yet, if that were conceded, it would not change the fact that the boat was really sold to satisfy their claims. The defendants had the advantage of the entire proceeds of the boat. Suppose the boat had not been partially destroyed by fire, and had been sold to pay seamen's wages and other preferred liens which had accrued while the boat was owned by the defendants, to the amount of the full value of the boat; should the defendants recover its value again because Winchell, Upson & Co. held an inferior lien against which the plaintiffs had covenanted? The defendants would not make such claim. The trouble in this case arises from the fact that the boat had been partially destroyed by fire, and what was left — the hull, machinery and fixtures — did not sell for much, and although the defendants had the benefit of what was left, they feel as if they had lost their boat substantially through plaintiff's fault.

Now if that is so, it is because it was burned (so far as it was burned) through the plaintiff's fault; for, as we have seen, it was only what was burned that was lost to defendants. In this matter of loss by fire, the defendants' theory is, that, as they had been wrongfully divested of the possession of the boat, and could not protect it against fire, those who had been the means of their being wrongfully divested of the possession should be responsible for it.

If property is wrongfully taken from the owner, and de-

1. DAMAGES: proximate cause. stroyed by fire, the wrong-doer is, of course, liable for its value. But then his liability does not arise from the fact of its loss by fire, but from the tort which preceded the loss.

It was through the plaintiffs' negligence, it is true, that

2. ——: ——: ——. the defendants' possession was divested; still, if they are liable, it is only for the damages resulting from such negligence. In this connection it should be observed that there is no evidence that the burning of the boat was in any way the result of the seizure. But even if it

was, the damages were not proximate.. The seizure was indeed the proximate result of the plaintiffs' negligence in not discharging the lien; but if the burning was the result of the seizure, it was the indirect result—some other cause intervening which was the proximate cause.

II.   The decree in favor of Winchell, Upson & Co. was for

3. VENDOR $251.50. On the day of that decree the defend-
and vendee: ants owed the plaintiffs the notes in suit, amount-
warranty: ex-
isting lien. ing to $3000 and accrued interest, which notes had been overdue more than four months.   The defendants should, therefore, have paid this Winchell, Upson & Co. claim. They could not say that it was disputed, and excuse them-selves on that ground. By the decree the plaintiffs were concluded, both as to the validity and amount. They author-ized defendants to confess the decree. At all events, the defendants did confess it, and have estopped themselves to say that they were not authorized. It appears further that one C. F. Manderson, who held for collection for plaintiffs the notes now in suit, informed defendants, as attorney for plaintiffs, that defendants might pay the Winchell, Upson & Co. claim, and that the same should be deducted from the notes. This fact, however, as testified to by Manderson, we do not deem material. Defendants had a right by law to dis-charge the incumbrance, and set off the amount against the notes. This rule has been repeatedly held in regard to real property, and we see no reason why it is not applicable to personal. *Baker v. Radsback,* 4 Ind., 533; *Whisler v. Hicks,* 5 Blackford, 100; *Dunn v. White,* 1 Ala., 645.

In *Owens v. Salter,* 38 Penn. St., 217, the court went still further. A purchaser of land held a deed with covenants of warranty. The land was incumbered by taxes when con-veyed. The purchase money not having .been all paid, and having become due, it was held to be the duty of the pur-chaser to pay the taxes (which were a lien against which the vendor had covenanted), and prevent a sale. We are of the opinion, therefore, that the defendants should have paid the Winchell, Upson & Co. claim, and the costs which had been made thereon.

While they owed the plaintiffs that amount, which was overdue, and the law allowed them to apply it upon the incumbrance, or so much thereof as was necessary, we see no reason why they should withhold the money, and allow the property to be sold. They stand in no different position than if the plaintiffs had furnished them the money, they advancing it with authority to apply it upon the incumbrance if they saw fit.

We are of the opinion that the plaintiffs' motion to set aside the general verdict, and for judgment in favor of the plaintiffs upon the notes as prayed in the petition, should have been sustained. Upon defendants' appeal, the case is affirmed; upon the plaintiffs',

